UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Karie Young, on behalf of</u>
<u>her son, A.Y.</u>,
     Claimant

     v.                               Case No. 13-cv-024-SM
                                       Opinion No. 2014 DNH 035
<u>Carolyn W. Colvin, Acting Commissioner,</u>
<u>Social Security Administration</u>,
     Respondent

**O R D E R**

Karie Young ("claimant") moves to reverse the Commissioner's denial of her son's application for children's Supplemental Security Income benefits.  <u>See</u> 42 U.S.C. § 405(g) (the "Act"). In support of that motion, Ms. Young says the Administrative Law Judge ("ALJ") erred in concluding that her son's impairments do not functionally equal a listed impairment.  The Commissioner objects and moves for an order affirming her decision.

For the reasons set forth below, the Commissioner's motion for an order affirming her decision is granted, and the claimant's motion to reverse is denied.

**Factual Background**

I.   <u>Procedural History</u>.

Claimant's son, A.Y., was born on June 2, 2004.  In May of 2010, claimant filed an application for Supplemental Security Income ("SSI") benefits on his behalf, alleging that he was disabled from birth.  Subsequently, she amended the date of his alleged onset of disability to May 19, 2010 (at which time A.Y. was nearly six years old).  When that application was denied, claimant requested a hearing before an ALJ.

On June 9, 2011, a hearing was held before an ALJ, at which claimant appeared (via video conference) and testified.  Two weeks later, the ALJ issued a written decision, concluding that A.Y. was not "disabled" within the meaning of the Act and denying his application for benefits.  The ALJ's decision became final (and subject to appeal) when the Appeals Council denied claimant's request for review.  She then filed this timely appeal and, in due course, a "Motion to Reverse" the Commissioner's decision denying benefits (document no. 8).  The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 10).  Those motions are pending.

2

II.  <u>Stipulated Facts</u>.

     Pursuant to Local Rule 9.1(d), the parties have submitted a comprehensive statement of stipulated facts which, because it is part of the court's record (document no. 13), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.


**Standard of Review**

I.  <u>Properly Supported Factual Findings by the ALJ are Entitled to Deference</u>.

     Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3).  <u>See also</u> <u>Irlanda Ortiz v. Secretary of Health & Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938).  It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by

substantial evidence.  <u>Consolo v. Federal Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).  <u>See also</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).


II.  <u>Entitlement to Children's Disability Benefits</u>.

    With regard to children's disability benefits, the Act provides, in pertinent part, that:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).  <u>See also</u> 20 C.F.R. § 416.924.


    In evaluating a child's application for SSI benefits, an ALJ must engage in a three-part inquiry and determine: (1) whether the child is engaged in substantial gainful activity; and, if not, (2) whether the child has an impairment or combination of impairments that is severe; and, if so, (3) whether the child's impairment meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations.  <u>See</u> 20 C.F.R. §§ 416.924(b)-(d).

If, at the third step of the analysis, the ALJ determines
that the child's impairment neither meets nor medically equals[1] a
listed impairment, he or she must then consider whether the
child's impairment "results in limitations that functionally
equal the listings."  20 C.F.R. § 416.926a(a).  An impairment
"functionally equals" the listings if it results in "marked"
limitations in two domains of functioning, or if it results in an
"extreme" limitation in one domain.  Id.  The six domains of
functioning in which the child's abilities are assessed are: (1)
acquiring and using information; (2) attending and completing
tasks; (3) interacting and relating with others; (4) moving about
and manipulating objects; (5) caring for one's self; and (6)
health and physical well-being.  20 C.F.R. § 416.926a(b)(1).

An "extreme" limitation is one that "interferes very
seriously with [the child's] ability to independently initiate,
sustain, or complete activities. . . .  It is the equivalent of
the functioning we would expect to find on standardized testing
with scores that are at least three standard deviations below the
mean."  20 C.F.R. § 416.926a(e)(3).  Consequently, an "extreme"
limitation would, generally speaking, place the child in the
lowest one percent (1%) of functioning in that domain for the

---

[1]   An impairment "medically equals" a listing if "it is at
least equal in severity and duration to the criteria of any
listed impairment."  20 C.F.R. § 416.926(a).

child's age group.  Here, claimant does not assert that her son suffers from an extreme limitation in any domain.

A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities. . .  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  20 C.F.R. § 416.926a(e)(2).  In other words, a "marked" limitation would, generally speaking, place the child in the lowest five percent (5%) of functioning in that domain for the child's age group.  It is, then, a substantial limitation.

## Discussion

I.   <u>Background - The ALJ's Findings</u>.

In concluding that A.Y. was not disabled within the meaning of the Act, the ALJ properly employed the mandatory three-step evaluation process described in 20 C.F.R. § 416.924. Accordingly, he first determined that A.Y. had not been engaged in substantial gainful activity since his alleged onset date - an unremarkable finding given A.Y.'s age.  Next, the ALJ concluded that the medical evidence of record indicates that A.Y. suffers from a "severe" impairment: asthma.  Admin. Rec. at 16.

6

At the third and final step of the sequential analysis,
however, the ALJ concluded that A.Y. does not have an impairment
or combination of impairments that meets or medically equals one
of the impairments listed in the pertinent regulations, nor does
he have an impairment or combination of impairments that
functionally equals a listed impairment.  Accordingly, he
concluded that A.Y. has not been disabled since his alleged onset
date of May 19, 2010.

All acknowledge that A.Y., now aged nine, suffers from
severe asthma and allergies - his numerous trips to the emergency
room alone support that conclusion.  And, at least on this
record, it seems his condition is exacerbated by inadequate
attention paid by his parents to repeated admonishments,
including that they reduce his exposure to dust in the home,
carefully monitor his diet, and, at a minimum, stop smoking in
the house and automobile.  See, e.g., Admin. Rec. at 522 (warning
claimant as early as February, 2007 of the "absolute need for
[A.Y.] to stay away from both environmental allergens as well as
food allergens."); 521 ("Mom finally did admit to the fact that
when she is not around dad will feed him almost any type of food
and does not follow the allergy list most of the time."); 742 (as
of March, 2011, claimant reported that she and her husband had
stopped smoking in home only within past week and, despite

testing done two years earlier that revealed A.Y.'s allergy to dogs, she disclosed that the family dog was still present in home). See also Id. at 133, 197, 203, 549, 551, and 568).

There is also evidence of failure to attend various follow-up medical appointments, as well as non-compliance with administering some prescribed medications. See, e.g., Id. at 451 and 551. See generally Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 534 (1st Cir. 1988) (noting that absent good cause, a claimant will not be found disabled if he or she is not compliant with prescribed treatment) (citing 20 C.F.R. § 404.1530); Irlanda Ortiz, 955 F.2d at 770 ("Social Security regulations specifically provide that to qualify for benefits a claimant must follow prescribed treatment.").

The ALJ appears to have been sufficiently troubled by that evidence to note that:

> DCYF [i.e., New Hampshire's Department of Health and Human Services, Division of Children, Youth and Families] were involved [because of] frequent emergency room use and poor compliance. . . [C]laimant's level of impairment would be much better controlled if medical compliance were followed, given that claimant has shown that he can improve with better control of the allergen[s] in his environment (Exhibit 4F).

Admin. Rec. at 18.

II.  <u>Claimant's Challenge to the ALJ's Adverse Decision</u>.

     Claimant agrees with the ALJ's conclusions that A.Y.'s
asthma is a "severe impairment," Admin. Rec. at 16, and that he
"has [a] marked limitation in health and physical well-being,"
<u>id</u>. at 25.  She challenges his decision on two grounds.  First,
she claims the ALJ erred in concluding that A.Y.'s asthma does
not meet or medically equal a listed impairment.  Next, she
challenges the ALJ's conclusion that A.Y.'s asthma does not
functionally equal a listed impairment - specifically, the ALJ's
finding that A.Y. suffers from "less than marked" limitations in
two particular domains of functioning: (a) attending and
completing tasks; and (b) moving about and manipulating objects.


     A.   <u>Meeting or Medically Equaling The Listed Impairment</u>.

     In support of her claim that the ALJ erred in failing to
find that A.Y.'s asthma meets or medically equals a listed
impairment (Listing 103.03 - "Asthma"), claimant says the ALJ's
contrary conclusion is inadequately supported and "conclusory."
The court disagrees.


     The relevant regulations define the listing level of
impairment due to asthma as follows:

A.   $FEV_1$ equal to or less than the value specified in table I of 103.02A[2]; or

B.   Attacks (as defined in 3.00C), <u>in spite of prescribed treatment</u> and requiring physician intervention, occurring at least once every 2 months or at least six times a year.  Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks; or

C.   Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:

  1.   Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or

  2.   Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period; or

D.   Growth impairment as described under the criteria in 100.00.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03 (emphasis supplied).  Although claimant asserts A.Y.'s asthma meets the criteria listed in both section 103.03B and 103.03C, she fails to develop that argument in any detail.  See Claimant's memorandum (document no. 8) at 4.  Aside from simply summarizing A.Y.'s medical history, she has failed to point to specific evidence

---

[2]   $FEV_1$ is the volume that has been exhaled at the end of the first second of a forced expiration of air from the lungs.

that meets the requirements of those sections (e.g., at least three months in a one year period during which A.Y. was prescribed corticosteroids for an average of at least five days). See Admin. Rec. at 184-86.  To the extent she relies upon the report from A.Y.'s first grade teacher, that evidence was appropriately considered and taken into account by the ALJ.  See Admin. Rec. at 20, 172-79.  Moreover, even if A.Y. did suffer the number and frequency of asthma attacks required by section 103.03C, it is, for the reasons mentioned above, doubtful the ALJ could have supportably found that A.Y. (or his guardians) were compliant with prescribed treatment, as is required.

      B.    Functional Equivalency of the Listed Impairment.

      In support of her position that A.Y.'s asthma "functionally meets" a listed impairment, claimant relies upon a report prepared by A.Y.'s kindergarten teacher and the school nurse, Admin. Rec. at 127-34, and, more recently, a report prepared by his first grade teacher, id. at 172-79.

      While those reports certainly suggest that A.Y. has various behavioral, communication, motor-function, and academic deficits, they are not sufficient to undermine the ALJ's conclusion that A.Y. is not "disabled" within the meaning of the Act - particularly when those reports are viewed in light of the entire

record.  Nor do those reports undermine the ALJ's conclusion that
A.Y. suffers from less than marked limitations in the two domains
of functioning at issue in this case.  See generally 20 C.F.R. §
416.926a(h) (describing the factors considered when assessing an
individual's ability to attend and complete tasks); 20 C.F.R. §
416.926a(j) (describing the factors considered when assessing an
individual's ability to move about and manipulate objects).

The ALJ adequately supported his conclusions that the
severity of the behaviors, signs, and symptoms described by
A.Y.'s teachers and the school nurse are not of a magnitude
sufficient to establish that A.Y. suffers from a "marked
limitation" - that is, one that would place A.Y. "at least two
. . . standard deviations below the mean," 20 C.F.R. §
416.926a(e)(2), or, more generally speaking, in the lowest five
percent (5%) of functioning in that domain for his age group.
And, because those conclusion are supported by substantial
evidence in the record, there is not a basis to reverse or vacate
them.

Finally, claimant asserts that the ALJ erred by discounting
the professional medical opinion of Dr. Diana Dorsey, a non-
examining state agency physician.  In her report, Dr. Dorsey
concluded that while A.Y. has a severe impairment, it does not

12

"meet, medically equal, or functionally equal the listings."
Admin. Rec. at 509.  At issue here are Dr. Dorsey's conclusion
that A.Y. has no limitation in the domain of "attending and
completing tasks," and her conclusion that he has no limitation
in the domain of "moving about and manipulating objects."  Id. at
511-12.

As to those two aspects of Dr. Dorsey's report, the ALJ
discounted Dr. Dorsey's opinion - apparently because he
recognized that, when she prepared her report, Dr. Dorsey did not
have the benefit of the statements that were subsequently
submitted by A.Y.'s teachers.  Accordingly, the ALJ concluded
that rather than "no limitation" in those two domains, A.Y. has
some, but "less than marked," limitations.  In support of that
conclusion, he specifically referenced the statements submitted
by A.Y.'s teachers.

Parenthetically, the court notes what is likely self-
evident: although she criticizes the ALJ's decision to discount
portions of Dr. Dorsey's expert report, claimant does not
actually embrace Dr. Dorsey's opinions.  In fact, she disagrees
with almost all of them.  Her argument is a technical one:
because she says the ALJ improperly discounted Dr. Dorsey's
opinions, and because she says his ultimate conclusions were

13

insufficiently grounded in other medical evidence, she asserts
that the ALJ was left without any medical basis for his
conclusions.  See Claimant's Reply Brief (document no. 12) at 5
("Having rejected Dr. Dorsey's opinion on this issue, the ALJ was
left with no medical basis at all.").  Claimant's argument is,
however, inconsistent with her own position on this matter.
While she argues that the teachers' reports provide an
insufficient basis from which to conclude that A.Y. suffers from
less than marked limitations (the ALJ's finding), she also argues
that those same reports provide an adequate basis from which to
conclude that he suffers from marked limitations (her view of the
evidence).

     Moreover, reports from a child's teachers are precisely the
type of evidence that an ALJ is encouraged to consider when
assessing a child's limitations in the six different functional
domains.  See, e.g., Social Security Ruling, Considering Opinions
and Other Evidence From Sources Who Are Not "Acceptable Medical
Sources" in Disability Claims, SSR 06-3p, 2006 WL 2329939 (Aug.
9, 2006).  Because he adequately explained his decision to do so,
the ALJ did not err in giving greater weight to the opinions of
A.Y.'s teachers than he did to the opinion of Dr. Dorsey with
regard to the two domains of inquiry at issue.

**Conclusion**

The ALJ's conclusion that A.Y.'s asthma did not meet or medically equal the severity of the impairments described in the regulations at listing 103.03 ("Asthma") is supported by substantial evidence in the record.  So, too, are his conclusions with regard to the level of A.Y.'s limitations in each of the six relevant domains of functioning.  The ALJ surveyed and adequately discussed A.Y.'s medical and non-medical history, and he supportably concluded that A.Y. does not suffer from a "marked limitation" in two or more of the domains of functioning.

Consequently, having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and Ms. Young, the court concludes that there is substantial evidence in the record to support the ALJ's determination that A.Y. was not disabled at any time prior to the date of his decision.  For the foregoing reasons, as well as those set forth in the Commissioner's memorandum, claimant's motion to reverse the decision of the Commissioner (document no. 8) is denied, and the Commissioner's motion to affirm her decision (document no. 10) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

February 25, 2014

cc:  Francis M. Jackson, Esq.
     Karen B. Fitzmaurice, Esq.
     Robert J. Rabuck, Esq.

16